IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHNNY J. SCHAECHTEL,** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL ACTION NO. PWG-14-2099** |
| **MARYLAND DIVISION OF CORRECTION, *et al.*,** | * | |
| | * | |
| **Defendants.** | | |
| | * | |
| | *** | |

## MEMORANDUM OPINION

Following a series of assaults on Plaintiff Johnny Schaechtel by other inmates during his incarceration, he filed a Complaint in this Court under 42 U.S.C. § 1983, alleging that Defendants were negligent and deliberately indifferent with regard to his safety. ECF No. 1. Pending is a Motion to Dismiss filed by Defendant John Moss, ECF No. 11, as well as a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendants Maryland Division of Correction, Former Secretary Gregg L. Hershberger, Jessup Correctional Institution, Correctional Officer II Emeka Okefor, and Correctional Officer II Kwame Badu ("Correctional Defendants"), ECF No. 17.[1]  Plaintiff has responded and Defendants have replied. ECF Nos. 15, 19, 20. Upon review of papers and exhibits filed, I find an oral hearing in this matter unnecessary. *See* Loc. R.

---

[1] Service has not been obtained as to Defendant Adetokumbo Ajayi. In light of Plaintiff's status as a self-represented, incarcerated litigant and the colorable claim he has stated, the Court has an obligation to assist Plaintiff in identifying the correct address of this Defendant so that service of process may be effected. *See Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1980); *see also Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 554-55 (7th Cir. 1996). The Assistant Attorney General shall be ordered to provide the last known home or business address of Ajayi, solely for purposes of service of process, or, in the alternative, to provide a statement regarding why the addresses are not available. Given obvious confidentiality considerations, personal information regarding all home addresses shall immediately be placed under seal by the Clerk.

105.6 (D. Md. 2014). For the reasons stated below, Moss's Motion to Dismiss shall be granted, the Correctional Defendant's dispositive motion will be granted in part and denied in part, and Plaintiff's motion to appoint counsel, ECF No. 16, shall be granted.

## Background

The case was instituted upon receipt of a civil rights Complaint filed by Plaintiff Johnny Schaechtel, an inmate currently confined at the Maryland Correctional Institution-Hagerstown ("MCI-H"). Compl. 1. He claims that on July 12, 2012, while he was in his cell at the Jessup Correctional Institution ("JCI"), another inmate got out of his cell, walked past Officer Okoro and another officer with a bottle in his hand and sprayed Plaintiff, through the slot in his door, with fecal matter and urine. Plaintiff states he, the cell and his belongings were all covered with the substances. The assaulting inmate cheered and returned to his cell, again walking past the two officers. Compl. 4; Request for Admin. Remedy 1, ECF No. 1-1. Plaintiff claims that on July 14, 2012, he reported to Defendants that he had received threats from other inmates and was in fear for his life. Compl. 4.

Plaintiff also alleges that, on December 27, 2012, while housed on administrative segregation, he was assaulted again by another inmate who threw urine and feces at his face through an unsecured door slot while Plaintiff was collecting trays on the tier. *Id.*; *see* Jan. 15, 2014 ALJ Proposed Dec. 1, 3-4, ECF No. 1-3.[2]   Plaintiff states that Officers Okefor and Ajayi were deliberately indifferent to Plaintiff's safety and well-being. Plaintiff claims that Okefor and Ajayi knowing and intentionally left inmates, such as Plaintiff, "who were assigned 'pending

---

[2] The Jan. 15, 2014 ALJ Proposed Decision was affirmed by Order of the Secretary. Order, Jan. 15, 2014 ALJ Proposed Dec. 11.

protective custody' . . . , unattended with general population [and] segregation inmates."3 Compl. 4.

Plaintiff filed a grievance with the Inmate Grievance Office ("IGO") regarding this assault. Jan. 15, 2014 ALJ Proposed Dec. 1. The administrative law judge ("ALJ") found that, at the time of the assault, Plaintiff was given the job of retrieving the food trays after meals were served to other inmates on the tier. *Id.* at 3. Tray slots were to be secured by DOC staff at all times. *Id.* On the date of the assault, not all tray slots were secured. *Id.* Okefor and Ajayi were on duty at the time. *Id.* The ALJ found that the officers were negligent in failing to follow Division of Correction ("DOC") procedures by not securing the food tray slots and allowing the inmate to spray Plaintiff with feces and urine. *Id.* at 6.

After this second assault, Plaintiff was denied immediate medical treatment. Compl. 5. Plaintiff claims that, as result of the assault, he contracted Hepatitis C. *Id.* He claims that on January 17, 2013, Physician's Assistant John Moss falsely advised him that he tested negative for Hepatitis C when the test results in fact showed a positive result. *Id.* Plaintiff states that this "falsification further denied the plaintiff medical treatment for a serious and life threatenin[g] condition." *Id.*

On May 2, 2013, Plaintiff was assaulted again. Facts adduced at Plaintiff's IGO hearing demonstrate that, at the time of the assault, Plaintiff was cleaning the B Building front lobby when Badu escorted a disciplinary segregation inmate through the lobby to see medical staff. Feb. 14, 2014 ALJ Proposed Dec. 4, ECF No. 1-4. "While in the lobby, [the other] inmate . . . pulled a contraband weapon, [a] lock with a string made from braided strips of bed sheets"

---

[3] To explain his possible need for protective custody, Plaintiff states that he "is a documented witness (State and Federal) against the BGF (Black Guerilla Family)." Pl.'s Opp'n to Corr. Defs.' Mot. 6 n.*; *see* Pl.'s Aff., ECF No. 20-1.

tied to it, from his groin area where it was hidden, and attempted to strike Plaintiff. *Id.* The ALJ
found that "Officer Badu did not follow proper escort techniques" in that "he did not search [the]
inmate . . . properly" and "handcuffed the inmate with his hands in front of his body, rather than
behind his body." *Id.* Plaintiff claims the assault occurred due to Badu's deliberate indifference to
Plaintiff's safety. Compl. 5.

According to Plaintiff, "[a]s a result of this series of attacks and deni[al] [of] medical
treatment," he "suffers chronic and de[]bilitating headaches, severe anxiety and paranoia." *Id.* As
relief, Plaintiff seeks an order for an independent medical and psychological evaluation, a finding
that Defendants violated Plaintiff's rights, and compensatory and punitive damages. *Id.* at 4, 6.
Plaintiff is currently incarcerated at the Maryland Correctional Institution-Hagerstown on
protective custody. Feb. 14, 2014 ALJ Proposed Dec. 5.

**Standards of Review**

**A.    Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it
fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237,
2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency
of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the
applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th
Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),
when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must
contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of

4

the elements of a cause of action, supported by mere conclusory statements, do not suffice,"
*Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from
*Iqbal* and *Twombly*).

Plaintiff is proceeding *pro se*, and his Complaint is to be construed liberally. *See Haines v.
Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Plaintiff from
pleading plausible claims. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing
*Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

## B.      Motion for Summary Judgment

In reviewing a motion for summary judgment, the Court considers the facts in the light
most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v.
DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575
F.3d 383, 391–92 (4th Cir. 2009).    Summary judgment is proper when the moving party
demonstrates, through "particular parts of materials in the record, including depositions,
documents, electronically stored information, affidavits or declarations, stipulations
. . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).    If the
party seeking summary judgment demonstrates that there is no evidence to support the
nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows
that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986).
The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary
judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).    Instead, the evidentiary
materials submitted must show facts from which the finder of fact reasonably could find for the

party opposing summary judgment. *Id.*

## Analysis

**A.     Sovereign Immunity**

Under the Eleventh Amendment, a state, including its agencies and departments, is immune from federal lawsuits brought by its citizens or the citizens of another state, absent consent. *See Penhurst State Sch. & Hosp. v. Halderman*, 465 U. S. 89, 100 (1984); *see also Global Mail Ltd. V. U.S. Postal Serv.*, 142 F.3d 208, 210 (4th Cir. 1998) ("Sovereign immunity deprives a court of jurisdiction to hear a case.").   While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code Ann., State Gov't  § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.   Thus, Plaintiff's Complaint against the Maryland Division of Correction and Jessup Correctional Institution, agencies within the State of Maryland, is barred by the Eleventh Amendment, and it will be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Additionally, to sustain an action under 42 U.S.C. § 1983, Plaintiff must demonstrate that: (1) he suffered a deprivation of rights secured by the Constitution of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Jessup Correctional Institution is not a "person" subject to suit or liability under § 1983. *See id.*; 42 U.S.C. § 1983. Plaintiff's complaint against Jessup Correctional Institution is subject to dismissal on this ground as well.

**B.     Supervisory Liability**

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior

liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Defendant Gregg L. Hershberger that resulted in a constitutional injury. Accordingly, Plaintiff's claims against Hershberger shall be dismissed.

## C.     Failure to Protect

Plaintiff alleges that all named correctional officers were deliberately indifferent in failing to provide adequate supervision and security to protect him and as such his right to be free from cruel and unusual punishment has been violated. An inmate's right to be free from cruel and unusual punishment includes the right to be protected from a substantial risk of serious harm at the hands of other inmates. *See Farmer v. Brennan,* 511 U.S. 825 (1994); *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015); *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997); *Belcher v. Oliver,* 898 F.2d 32, 34 (4th Cir. 1990).

As noted by the Supreme Court in *Farmer*,

> [P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.  Having incarcerated persons [with] demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

511 U.S. at 833 (internal quotation marks and citations omitted). "Prison officials are, therefore, obligated to take reasonable measures to guarantee inmate safety." *Makdessi*, 789 F.3d at 132.  In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S at 834.

Relying on the ALJ's findings of negligence[4] and providing no additional evidence to the Court, the Correctional Defendants maintain that Plaintiff has failed to allege sufficient facts to make out a constitutional claim.  The Correctional Defendants argue that Plaintiff has put forth "insufficient allegations that correctional personnel had any reason to believe that plaintiff was going to be assaulted and to suffer serious harm." Corr. Defs.' Mem. 6.  They also maintain that "none of the assaults resulted in any serious or significant physical or emotional injury.  Plaintiff did not contract Hepatitis C from these events and, at most, he encountered a superficial scratch on his neck." *Id.*

Plaintiff claims that he advised the named Defendants that he feared for his safety. He provides a copy of an administrative remedy request dated July 14, 2012, wherein he recounted being assaulted by another inmate in the presence of correctional staff.  Request for Admin.

---

[4] The ALJ did not consider whether Plaintiff's constitutional rights were violated. Jan. 15, 2014 ALJ Proposed Dec. 4-7; Feb. 14, 2014 ALJ Proposed Dec. 5–9.

Remedy 1.  Within the request, Plaintiff stated that earlier on the day of the July assault, the

inmate who assaulted him told a correctional officer that he was going to "get" Plaintiff.  *Id.* at 2.

Additionally, Plaintiff asserts, and Defendants do not deny, that at the time of each of the assaults,

Plaintiff's suitability for protective custody was under review.  Pl.'s Opp'n to Moss Mot. 3.[5]

Plaintiff indicates that as of June 15, 2012, he was identified as at risk of harm and assigned to

administrative segregation pending protective custody. Pl.'s Opp'n to Corr. Defs.' Mot. 6; Notice

of Assignment to Admin. Seg., ECF No. 20-2.  Plaintiff further asserts that, even though inmates

so assigned are not to be assigned work detail, he was required to "volunteer" to clean the tier and

lobby of the disciplinary and administrative segregation units, which placed him in harm's way.

It is also undisputed that the named correctional officers Okefor, Ajayi and Badu failed to comply

with Division of Correction policies regarding security procedures in regard to the securing of

food slots and the escort of inmates.  Jan. 15, 2014 ALJ Proposed Dec. 6; Feb. 14, 2014 ALJ

Proposed Dec. 7–8.  On the record before me, taking the facts in a light most favorable to

Plaintiff, and in consideration of both Plaintiff's designation as an at-risk inmate and the apparent

blatant repeated violations of security procedures, I cannot conclude as a matter of law that the

named correctional officers were not deliberately indifferent to a known risk of harm.

Plaintiff alleges that as a result of the repeated attacks upon him and the denial of medical

care, he suffers chronic headaches and severe anxiety, as well as Hepatitis C.  Compl. 5; Pl.'s

Opp'n to Moss Mot. 4. While the Correctional Defendants provide evidence that Plaintiff tested

positive for Hepatitis C in January of 2009, refuting his contention that he contracted the virus as

---

[5] Plaintiff filed affidavits along with his responses to Defendants' motions, stating that his responses "are true and correct to the best of [his] personal knowledge" and that he is "able to give testimony on these matters."  Pl.'s Opp'n to Moss Mot. 17; Pl.'s Aff., ECF No. 20-1.

a result of the assaults, Med. Recs. 1, ECF No. 17-2,[6] they have failed to address his allegations

regarding chronic headaches and severe anxiety and paranoia which he claims he developed as a

result of the assaults. Again, I cannot conclude as a matter of law on the meager record before me

that the harm Plaintiff suffered was not objectively serious.   As such, Defendants Okefor, Ajayi,

and Badu's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, shall be

denied and counsel shall be appointed for Plaintiff.

Additionally, the determination of whether Defendants Okefor, Ajayi, and Badu are

entitled to qualified immunity is more appropriately addressed after the facts of the case have

been developed and a determination has been made as to whether Plaintiff has suffered a violation

of his constitutional rights.   Accordingly, dismissal of Plaintiff's complaint based on qualified

immunity is not proper at this time.

**D.     Medical Claim**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of

its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute

and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003)

citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim

for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their

failure to act amounted to deliberate indifference to a serious medical need.   *See Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof

---

[6] None of the parties have explained what, if any, treatment Plaintiff received for Hepatitis C in 2009. Given Plaintiff's professed surprise at testing positive for Hepatitis C in 2013, and the lack of fact finding by the ALJ regarding Plaintiff's Hepatitis C status prior to the assaults, I am left to wonder whether Plaintiff had been treated successfully for Hepatitis C and no longer showed a viral load prior to the 2012/2013 attacks.  Such questions cannot be answered based on the limited record presented.

that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F. 3d 101, 105 (4th Cir. 1995) (*quoting Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown* 240 F. 3d at 390 (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a medical provider linked presence of symptoms

11

with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id.* at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).  Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor.  Plaintiff has failed to submit any evidence to support his claim that Moss provided constitutionally inadequate medical care.  Rather, Plaintiff's claim against Moss is one of negligence, i.e., that Moss erred in reporting to him that his test for Hepatitis C was negative in January, 2013, when it was in fact positive.  Plaintiff's bald claim that Moss acted to conceal Plaintiff's true test results is not supported by any facts.  To the contrary, it appears from the record that the accurate results of Plaintiff's medical testing were relayed to him in April of 2013.[7]  Jan. 15, 2014 ALJ Proposed Dec. 4. Moreover, Plaintiff has offered no evidence that he was injured as a result of the three month delay in relaying the diagnosis to him after he met with Moss in January 2013. Accordingly, Plaintiff's claim against Moss shall be dismissed.

### Conclusion

Moss's Motion to Dismiss shall be granted.  The Correctional Defendant's dispositive motion will be granted in part and denied in part as herein stated.  Plaintiff's Complaint against Maryland Division of Correction, Gregg L. Hershberger, and Jessup Correctional Institution is dismissed.  Plaintiff's motion to appoint counsel shall be granted. A separate Order follows.

Date: 09 08 2015

Paul W. Grimm
United States District Judge

---

[7] Moreover, as noted earlier, Plaintiff first tested positive for Hepatitis C in 2009 and was enrolled in the chronic care clinic at that time.  Med. Recs. 1.